## THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE:                              )
                                    )
JOHN THOMAS COPLEY,                 )        Case No. 97-30131
                                    )
            Debtor.                 )        Chapter 7
                                    )
_____     )
                                    )
JOHN THOMAS COPLEY,                 )
                                    )
            Plaintiff,              )
                                    )
        v.                          )        Adv. Proc. No. 07-2061
                                    )
WEST VIRGINIA STATE TAX             )
DEPARTMENT,                         )
                                    )
            Defendant.              )
_____     )

### MEMORANDUM OPINION

John Thomas Copley (the "Debtor"), pro se, seeks a declaration from this court that taxes owed to the State of West Virginia from 1993 were discharged in his Chapter 7 bankruptcy case, and he also requests damages against the State of West Virginia for violating the automatic stay and/or discharge injunction of the Bankruptcy Code. The West Virginia State Tax Department (the "Tax Department") contends that its tax assessment relates to the Debtor's 1993 tax year, for which a return was due no later than April 15, 2004. Because this date is within three years of the Debtor's February 26, 1997 bankruptcy petition, the Tax Department claims that the debt is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i). Even if the tax debt is excepted from discharge, the Debtor argues, the Tax Department should be prohibited from collecting it based on the facts of this case.

The parties have filed cross-motions for summary judgment, which have been fully briefed, and the case is ripe for adjudication. For the reasons stated herein, the court will grant summary judgment in favor of the Tax Department to the extent that the Debtor's 1993 tax obligation is excepted from discharge, and will grant summary judgment to the Debtor only to the extent that the Debtor has demonstrated that the Tax Department violated the automatic stay of the Bankruptcy

Code.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

The following facts are undisputed and are dispositive for purposes of the court's decision on summary judgment.

For calendar year 1993, the Debtor, with the assistance of an accountant, filed at least three separate tax returns: Copley & Chaney, Inc., an "S" Corporation; J. T. Copley & Co., also an "S" Corporation; and his joint tax return with his then spouse.

On September 19, 1996, the Internal Revenue Service ("IRS") made additional tax assessments regarding the Debtor's 1993 personal income tax return, claiming that the Debtor owed

–2–

it an additional $33,238.24. According to a letter from the Debtor's accountant, the two main items that concerned the IRS were consulting income of $25,000, and a $49,000 gain on the sale of equipment. The Debtor's accountant stated in a letter to the Debtor that his 1993 taxes were completed properly, with the income from those two items being included on his corporate tax returns. According to the Tax Department, the IRS's reassessment became final on January 8, 1997.

On February 26, 1997, the Debtor filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of West Virginia, and the Debtor listed the Tax Department as a creditor in his case. On March 3, 1998, the court converted the Debtor's Chapter 13 case to one under Chapter 7. On August 4, 1998, the Debtor received his Chapter 7 discharge. The Debtor's case had assets available for distribution to his creditors, and the case was not closed until October 4, 2007.

Meanwhile, on April 10, 1997, the IRS filed a proof of claim against the Debtor's bankruptcy estate claiming to be owed $26,748. The Debtor objected to that claim, and the court transmogrified the claim objection process into an adversary proceeding. On February 11, 1998, the IRS filed an amended proof of claim for $35,832.05, and pursuant to an August 18, 1998 stipulated order resolving the adversary proceeding, the Debtor agreed that he owed the IRS $24,000, which was subsequently disbursed to the IRS by the Debtor's Chapter 7 trustee.[1]

According to the Tax Department, the IRS notified it on April 21, 1999, that the IRS had adjusted the Debtor's 1993 personal income tax return. On June 11, 1999, the Tax Department sent a notice to the Debtor and his non-debtor spouse that the information it obtained from the IRS caused their West Virginia taxable income to increase by $72,356. As corrected by the Tax Department, the Debtor owed an additional 1993 tax obligation of $8,839.42, which, in the Tax Department's view, became final when the Debtor failed to timely avail himself of administrative remedies to contest the amount owed.

---

[1] The Debtor asserts in his summary judgment papers that he did not personally owe any money for income taxes to the IRS from 1993; rather the money was owed by his two "S" Corporations. The record reflects, however, that the IRS audited the Debtor's personal income tax returns and the Debtor's "S" Corporations did not pay the amount owed – it was paid by the Debtor as his personal obligation. The Debtor's "S" Corporations did not file bankruptcy, but they were each listed as a d/b/a of the Debtor.

–3–

When the Debtor failed to pay the amount owed, the Tax Department recorded its tax lien in the real property records of Wayne County on July 18, 2005. The Debtor owned real property in Wayne County, which was property of his bankruptcy estate, and which was subject to sale by the Debtor's Chapter 7 Trustee. In fact, on December 1, 2005, the court granted the Trustee permission to sell the property.

### III. DISCUSSION

The Tax Department argues that the Debtor's personal income tax obligation from 1993, as subsequently readjusted, is excepted from the Debtor's discharge pursuant to 11 U.S.C. §§ 523(a)(1) and 507(a)(8)(i). More specifically, the Tax Department argues that taxes owed by the Debtor from the 1993 tax year are excepted from discharge on the grounds that those taxes were due within three years of the Debtor's February 26, 1997 bankruptcy petition.

Even if his tax debt from 1993 is excepted from his bankruptcy discharge, the Debtor argues, the Tax Department should be precluded from collecting it based on the passage of time, its failure to file a proof of claim in his bankruptcy case, and because the Tax Department is impermissibly "piggy-backing" on the work performed by the IRS. Moreover, the Debtor contends, the Tax Department has violated the automatic stay of the Bankruptcy Code by seeking to collect his 1993 tax obligation.

### A.    Priority Tax Exception to Discharge

The Tax Department argues that the Debtor's 1993 personal income tax is a priority debt because it is a tax that was due no later than April 15, 1994, which is within three years of the Debtor's February 26, 1997 bankruptcy petition.

Pursuant to 11 U.S.C. § 523(a)(1)(A), a Chapter 7 discharge does not discharge an individual from any debt for a tax "of the kind and for the periods specified in section ... 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." In turn, § 507(a)(8), as enacted before it was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,[2] provides priority treatment for the claims of governmental units to the extent that such claims are for:

---

[2] Changes rendered to § 507(a)(8) by the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, are only applicable to those case filed on or after October 17, 2005.  BAPCPA § 1501(a).

–4–

        (A) a tax on or measured by income or gross receipts–

                (i)        for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition . . . .

11 U.S.C. § 507(a)(8)(A)(i) (2004) (emphasis added).

        While the language of § 507(a)(8)(A)(i) is not a model for clarity, its application is explained in *Collier*:

> For example, assume the debtor is a calendar year taxpayer. For the year 2004 the debtor's tax return is due on April 15, 2005. If the debtor files a bankruptcy petition on or before April 14, 2008, the tax owed by the debtor for 2004 will be entitled to priority [and consequently excepted from discharge]. If the debtor files a bankruptcy petition on or after April 15, 2008, the tax owed for 2004 will not be entitled to priority [and consequently will not be excepted from discharge under § 523(a)(1)(A)].

4 *Collier on Bankruptcy* ¶ 507.10[2][a] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2007); *see also Young v. United States*, 535 U.S. 43, 46 (2002) ("If the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim enjoys eighth priority under § 507(a)(8)(A)(i) and is nondischargeable in bankruptcy under § 523(a)(1)(A).").

        Here, the Debtor's tax return for 1993 was due on April 15, 1994, which is less than three years before the filing of the Debtor's February 26, 1997 bankruptcy petition. Therefore, pursuant to 11 U.S.C. §§ 507(a)(8)(A)(i) and 523(a)(1)(A), the taxes due from 1993 are not subject to discharge.

**B.**     **Statute of Limitations / Laches**

        The Debtor contends that the Tax Department's effort on June 11, 1999, to collect a tax obligation from the 1993 tax year is simply too late, especially considering that the Tax Department had notice that his 1993 income taxes were subject to readjustment when he filed his bankruptcy petition by virtue of the fact that the Tax Department was listed as a creditor on his bankruptcy

schedules, and was listed on the bankruptcy court's mailing matrix.[3]

Pursuant to W. Va. Code § 11-10-15(a), any addition to an individual's income tax obligation must be assessed within three years after the date the return was filed. Under this rule, the Debtor's 1993 tax return was filed no later than April 15, 1994, and the three-year period would have expired on April 15, 1997. Because the Tax Department did not assess additional income tax liability until June 11, 1999, the Tax Department's assessment was too late under § 11-10-15(a). However, the West Virginia Code further provides:

> **(2) Deficiency in federal tax.**
> Notwithstanding subsection (a), in the event of a final determination by the United States Internal Revenue Service or other competent authority of a deficiency in the taxpayer's federal income tax liability, the period of limitation, upon assessment of a deficiency reflecting such final determinations in the net income tax imposed by article . . . twenty-one . . . of this chapter, shall not expire until ninety days after the Tax Commissioner is advised of the determination by the taxpayer as provided in section . . . fifty-nine of said article twenty-one . . . or until the period of limitations upon assessment provided in subsection (a) has expired, whichever expires the later, and regardless of the tax year of the deficiency.

§ 11-10-15(c)(2); *see also* §§ 11-21-1 et seq. (personal income tax obligations); 11-21-59 (duty of the taxpayer to file a report with the Tax Commissioner of a reassessment by the IRS).

On April 21, 1999, the Tax Department claims to have received notice from the IRS of its final determination of income tax changes to the Debtor's 1993 federal return. On June 11, 1999, the Tax Department sent a notice to the Debtor and his non-debtor spouse that it had obtained information from the IRS that caused their West Virginia taxable income to increase by $72,356. Therefore, the Tax Department's additional income tax assessment from 1993 was timely pursuant to § 11-10-15(c)(2).

---

[3] The Debtor also references the doctrines of equitable estoppel, abuse of process, and malicious use of process as grounds for relief from the Tax Department's June 1999 assessment of additional income taxes from 1993. None of these doctrines are applicable to this case. In short, no evidence exists that the Tax Department has misrepresented material facts for equitable estoppel to apply, and the action of the Tax Department in issuing its assessment does not undermine the integrity of the bankruptcy system for abuse of process to apply. The Debtor also alleges, without support, that the Tax Department is liable for deceit, lack of candor, fraud, false representation, collusion and fraudulent concealment. At best, the Debtor has argued that he has been prejudiced by the State's action, which is an element of a defense based on laches.

-6-

The Debtor states, however, that the Tax Department was listed on his bankruptcy petition as a creditor, and, therefore, had notice of his bankruptcy petition and notice of his adversary proceeding with the IRS that disputed his 1993 income tax liability. As a result, the Debtor argues, the Tax Department only had 90 days from this bankruptcy petition date of February 26, 1997, to make its assessment after having notice that the IRS was attempting to readjust his 1993 federal return.[4]

Section 11-10-15(c)(2) of the West Virginia Code is very specific as to when the statute of limitations period expires when the IRS makes a final determination on an income tax deficiency. The Tax Department has " ninety days after the Tax Commissioner is advised of the determination by the taxpayer as provided in section . . . fifty-nine of said article twenty-one." In turn, § 11-21-59 requires "the taxpayer [to] report such change or correction in federal taxable income within ninety days after the final determination of such change, correction, or renegotiation."

Here, the Debtor never filed such a report with the Tax Commissioner; rather, according to the Tax Department, the IRS notified it of its reassessment on April 21, 1999, and the Tax Department timely sent the Debtor a notice of its reassessment on June 11, 1999. Had the Debtor acted pursuant to his statutory obligation and affirmatively filed a report with the Tax Commissioner, then the 90-day period would have expired sooner. Under the circumstances of this case, receiving notice of a bankruptcy filing is not the equivalent of a report as required by § 11-21-59.

Of course, even if the Tax Department's collection action falls within the applicable statute of limitations, collection may nevertheless be barred under the doctrine of laches. The equitable defense of laches is available when a party has knowledge of a claim, there is an inexcusable delay in bringing the action, and where the delay is prejudicial to the defendant. *E.g., Patterson v. County of Fairfax*, No. 9502386, 1996 U.S. App. LEXIS 15391 at *3 (4th Cir. June 26, 1996) ("To apply laches, there must be a finding that a plaintiff inexcusably delayed in filing a suit and that the delay

---

[4] In the alternative, the Debtor argues that the Tax Department missed the deadline to file a complaint to declare his 1993 tax obligation nondischargeable under Fed. R. Bankr. P. 4007(c), which requires that the complaint be filed within 60 days of the Debtor's first meeting of creditors under 11 U.S.C. § 341. That rule, however, only applies to the exceptions to discharge listed in subsections (2), (4), and (6) of § 523. Rule 4007(b) provides that other § 523(a) complaints – like this one which falls under subsection (1) – may be filed at any time.

–7–

resulted in undue prejudice to the defendant."); *Ballard v. Kitchen,* 36 S.E.2d 390 (W. Va. 1945) ("'Laches, in legal significance, is such delay in the enforcement of one's right as works a disadvantage to another; or, such delay, without regard to the effect it may have upon another, as will warrant the presumption that the party has waived his right.'") (Syllabus Pt. 2) (citation omitted).

In this case, the Debtor argues, the Tax Department may have had knowledge that the IRS was reassessing the Debtor's income tax liability from 1993 as early as his February 26, 1997 bankruptcy petition, and the fact that the Tax Department did not begin to seek collection of taxes due from 1993 until June 1999 – more than five years after the 1993 return was due – is too late.

The Tax Department's failure to notice the Debtor of its reassessment until June 11, 1999, however, is not an inexcusable delay. The Debtor contested the IRS's determination of his 1993 income taxes, and the matter was not settled until August 18, 1998. The Debtor never sent a report to the Tax Commissioner notifying the Commissioner of the increase in his income for purposes of his federal return as required by W. Va. Code § 11-21-59, and he is, therefore, at fault for any delay of the State in notifying him if its reassessment. Moreover, State income tax obligations are significantly dependent on information contained in a taxpayer's federal return, and allowing the taxpayer and the IRS to reach a resolution of identical issues conserves State resources and avoids unnecessary duplication of efforts.

Regarding any prejudice suffered by the Debtor as a result delayed notification of the State's June 11, 1999 notice of reassessment, the Debtor contends that, by waiting, the Tax Department missed the proof of claim bar date in his case and lost the chance to be paid from the assets of his bankruptcy estate. The Debtor does not argue that material evidence and/or witnesses have been lost due to the passage of time. Indeed, the Debtor had only finished litigating with the IRS less than one-year before receiving the Tax Department's notice of an additional assessment. Furthermore, the Debtor knew, or should have known, that if the IRS adjusted his taxable income then he would also likely be incurring an additional tax liability to the State. The Debtor was aware of this information before he filed his February 26, 1997 bankruptcy petition.

The proof of claim bar date in the Debtor's Chapter 7 case did not expire until July 30, 1998, and the Debtor did not reach a resolution with the IRS until August 18, 1998. The Tax Department could not have known whether or not the Debtor would owe additional State income taxes until after

–8–

the resolution of the Debtor's litigation with the IRS, and the Tax Department elected not to file a contingent claim for taxes owed. Unsecured creditors of a debtor are not required to file proofs of claim, but one must be filed if the creditor wishes to be paid from property of the bankruptcy estate. Fed. R. Bankr. P. 3002(a) ("An unsecured creditor . . . must file a proof of claim . . . for the claim . . . to be allowed . . . ."). When a creditor fails to file a proof of claim by the bar date, a debtor has the right to file a proof of claim on the creditor's behalf within 30 days after the expiration of that bar date. Fed. R. Bankr. P. 3004 ("If a creditor does not timely file a proof of claim . . . the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing such claims . . . ."). Here, the Debtor did not avail himself of the opportunity to file a proof of claim on behalf of the Tax Department, and he cannot claim that he was unduly prejudiced by his own failure to act.

## C.   Violation of the Automatic Stay / Discharge Injunction

The Debtor seeks $10,000 in damages for the Tax Department's alleged violations of the automatic stay and/or the discharge injunction of the Bankruptcy Code. Because the court has already determined that the debt owed to the Tax Department for the Debtor's 1993 income taxes is excepted from discharge, there can be no violation of the discharge injunciton.

When the Debtor filed his February 7, 1997 Chapter 13 bankruptcy case, which was later converted to a Chapter 7 case on March 3, 1998, an automatic stay was in place to prevent, inter alia, "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). The automatic stay also prohibits "any act to create, perfect, or enforce any lien against property of the estate. § 362(a)(4). The duration of the automatic stay is not perpetual; it terminates as to the property of the debtor when the debtor receives a discharge. § 362(c)(2)(C). In contrast, the stay terminates as to property of the estate on the earlier of: (1) the time when property is no longer part of the estate, (2) dismissal, or (3) the time the case is closed. 11 U.S.C. § 362(c)(1), (2); *Henneghan v. Columbia Gas of Va., Inc. (In re Henneghan)*, No. 05-1220, 2005 Bankr. LEXIS 1770 at *12 (Bankr. E.D. Va. June 22, 2005) ("The automatic stay expires (except as to property of the estate) when the debtor is granted or denied a discharge."); *In re Lawson*, No. 04-20441, 2004 Bankr. LEXIS 740 at *5 (Bankr. E.D. Ky. May 28, 2004) ("[T]he automatic stay's protection of property of the debtor expires upon the granting of a discharge . . . .

–9–

However, the automatic stay also protects property of the estate, and that protection does not expire until the property is no longer property of the estate . . . ."); *In re Kasper*, 309 B.R. 82, 99 n.27 (Bankr. D.C. 2004) ("The debtor's discharge terminates the automatic stay with respect to acts against the property of the debtor . . . .").

In this case, when the Debtor received his August 4, 1998 discharge, the automatic stay terminated with respect to actions against the Debtor and property of the Debtor. Concerning property of the estate, however, the Debtor's main bankruptcy case was not closed until October 4, 2007, and the automatic stay with respect to property of the estate remained in place until that time, or, with respect to specific property, when that property was no longer property of the estate. For example, on December 1, 2005, this court granted the Trustee permission to sell real property in Wayne County, West Virginia, which constituted property of the bankruptcy estate until the date of sale.

Importantly, the Tax Department did not contact the Debtor with regard to this reassessed liability for his 1993 taxes until June 11, 1999 – well after the automatic stay had terminated with regard to actions against the Debtor personally. Therefore, there can be no violation of the automatic stay with respect to the Tax Department's contacts with the Debtor to collect a pre-petition tax liability. *See also* 11 U.S.C. § 362(b)(9)(B) (creating an exception to the automatic stay to allow taxing authorities to issue a notice of a tax deficiency).

The record reflects, however, that on July 18, 2005, the Tax Department recorded a lien on the Debtor's Wayne County real property, which was still property of the Debtor's bankruptcy estate, and which was subject to sale by the Debtor's Chapter 7 trustee. The Tax Department argues that its actions are insulated by an exception to the automatic stay:

> (b)    The filing of a petition . . . does not operate as a stay –
>
> . . .
>
> (9)    under subsection (a), of –
>
> . . .
>
> > (D)    the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

-10-

11 U.S.C. § 362(b)(9)(D).

As made evident by the statutory language, and by the case law interpreting § 362(b)(9)(D), a governmental entity is not authorized to collect the assessed tax. *E.g.*, *Pullmann v. IRS (In re Pullmann)*, 319 B.R. 443, 446 (Bankr. E.D. Va. 2004) (denying summary judgment in favor of the IRS on a stay violation issue to the extent that the IRS filed a notice of a tax lien against property of the estate that had not revested in the debtor); *In re LTV Steel Co.*, 264 B.R. 455, 472 (Bankr. N.D. Ohio 2001) (concluding that letters sent by the Minnesota State Tax Department were not excepted from the automatic stay under § 362(b)(9)(D) to the extent they threatened to seize property of the estate); *Covington v. IRS (In re Covington)*, 256 B.R. 463, 466 (Bankr. D.S.C. 2000) (finding that a "notice of intent to levy" sent by the IRS violated the automatic stay and was not excepted under § 362(b)(9)(D)).

Accordingly, while the automatic stay exception in § 362(b)(9) insulates the Tax Department to the extent it made an assessment and sent notice of that assessment to the Debtor, it was not authorized under § 362(b)(9) to record a lien against the Wayne County property that had not yet been sold by the Trustee. The mere fact that the Tax Department holds a debt that is excepted from discharge does not grant the Tax Department authority to violate the automatic stay. *E.g.*, *Boatmen's Bank v. Embry (In re Embry)*, 10 F.3d 401, 404 (6th Cir. 1993) (concluding that debts excepted from discharge may not be executed on with regard to property of the estate, which is still protected by the automatic stay); *Parker v. Boston Univ. (In re Parker)*, 334 B.R. 529, 536 (Bankr. D. Mass. 2005) ("There is simply no provision in the bankruptcy code that suggests that debts declared or presumed nondischargeable are no longer subject to the automatic stay.").

At least two causes of action are available to remedy automatic stay violations. A violation of the automatic stay may be brought as a contempt proceeding, *Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F.3d 1, 8 (1st Cir. 2003), or, when an individual is injured by a wilful stay violation,[5] by an action under 11 U.S.C. § 362(h) (redesignated as § 362(k) under BAPCPA's

---

[5] A "wilful" violation of the automatic stay occurs when a creditor commits an intentional act with knowledge of the automatic stay. *E.g.*, *Citizens Bank v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994) ("To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."), *rev'd on other grounds*, 516 U.S. 16 (1995); *Covington*, 256 B.R. at 466 ("[T]he IRS knew of the debtor's filing

-11-

amendments). Pursuant to § 362(h), an individual may recover "actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages."

In this case it is unclear as to what, if any, damages were suffered by the Debtor as a result of the Tax Department recording a tax lien against property of the estate. More specifically, without an injury-in-fact, the Debtor may lack standing to bring a claim for damages. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (constitutional standing requires an injury-in-fact that is traceable to the conduct of the defendant).

As previously noted, the Debtor received a discharge on August 4, 1998, at which time the automatic stay terminated as against the Debtor and his property. Thereafter, the stay had force and effect only against property of the estate, which was under the supervision of the Trustee. Given these circumstances, the parties have not addressed whether the Debtor has any standing to vindicate a stay violation by the Tax Department against property of the estate, or whether only the Trustee can do so. Moreover, even assuming, for the sake of argument, that the Debtor has standing to prosecute an action regarding a violation of the stay against property of the estate, he has not yet demonstrated that he is entitled to any recovery since he has not established that he was harmed by the filing of the tax lien. Also, in the event that the Debtor can prove an injury-in-fact, the extent to which damages are available against the Tax Department has not been addressed by the parties. *See, e.g.*, 11 U.S.C. §§ 106(a) (abrogation of sovereign immunity with respect to §§ 105 and 362 of the Bankruptcy Code); § 106(a)(3) (prohibition on punitive damages). Therefore, the court will direct that a further hearing be held to consider (1) the Debtor's standing to bring an action for a violation of the automatic stay under the circumstances of this case, (2) whether the Debtor suffered any injury as a result of the Tax Department's violation of the automatic stay, and, if so, (3) what would be the appropriate remedy, if any.

## IV. CONCLUSION

For the above-stated reasons, the court will grant summary judgment to the Tax Department

---

and the Notices of Intent to Levy dated December 21, 1998, which were sent to the debtors constitute a willful violation of the automatic stay . . . ."). Here, no dispute exists that the Tax Department knew of the Debtor's bankruptcy filing before it filed the tax lien on the Debtor's Wayne County property.

-12-

to the extent that the Tax Department's reassessment of taxes owed from 1993 are excepted from the Debtor's discharge, and will grant summary judgment in favor of the Debtor to the extent that the Debtor demonstrated that the Tax Department violated the automatic stay. In all other respects, the motions for summary judgment will be denied. The court will enter a separate order.

ENTERED this 13 th day of March 2008.

Honorable Patrick M. Flatley
Judge, United States Bankruptcy Court

-13-